UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>                    Plaintiff,<br><br>    v.<br><br>KATHY RADFORD,<br><br>                         Defendant. | Case No. 1:09-CV-00555-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are the following motions: (1) Defendant's Motion to Dismiss and/or Motion for Summary Judgment (Dkt. 33) ("Defendant's Motion"); (2) Plaintiff's Motion for Leave of Court to File Second Amended Civil Rights Complaint (Dkt. 36) ("Plaintiff's Motion to Amend"); (3) Plaintiff's Motion to Dismiss Defendant Kathy Radford's Motion for Summary Judgment (Dkt. 37), which the Court construes as a Motion to Deny Defendant's Motion under Federal Rule of Civil Procedure 56(d) ("Plaintiff's Rule 56(d) Motion");[1] and (4) Plaintiff's Motion to Take Judicial Notice of ICC Defendants Exhibits ICC Hayes 214 through ICC Hayes 217 (Dkt. 38) ("Plaintiff's Motion for Judicial Notice").

Having fully reviewed the record, the Court finds that the facts and legal

---

[1]  Plaintiff calls this Motion a "Rule 56(f) Motion," in reference to former subsection (f) of Rule 56. (*See* Dkt. 37.) The Federal Rules of Civil Procedure have been amended, however, and the substance of former Rule 56(f) is now found in Rule 56(d).

**MEMORANDUM DECISION AND ORDER - 1**

arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument. D. Idaho Loc. R. 7.1. For the reasons that follow, the Court concludes that all of Plaintiff's claims must be dismissed because (1) Plaintiff did not exhaust his administrative remedies as to most of his claims, and (2) the claims that he did exhaust do not involve legal mail and, therefore, any opening of that mail did not violate Plaintiff's constitutional rights. The Court further concludes that any amendment would be futile and will therefore grant Defendant's Motion.

## BACKGROUND

This section includes facts that are material to the resolution of the issues in this case. Because Plaintiff failed to respond to Defendant's Motion other than to file his Rule 56(d) Motion and his Motion to Amend, the Court deems the following facts undisputed for purposes of this Order. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may[] . . . consider the fact undisputed for purposes of the motion[] . . . .").

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at Idaho Maximum Security Institution. Plaintiff filed the instant case, which relates to incidents occurring when Plaintiff was incarcerated at Idaho Correctional Center (ICC), against six defendants. In its Initial Review Order, the Court reviewed Plaintiff's Complaint under 28 U.S.C. § 1915A and determined that it stated a

**MEMORANDUM DECISION AND ORDER - 2**

colorable claim only against Defendant Radford for her allegedly improper opening of Plaintiff's legal mail. (*See* Dkt. 6 at 4.) The Court dismissed all of Plaintiff's remaining claims. (*Id.* at 7-8.) Defendant Radford now moves to dismiss Plaintiff's Complaint or, in the alternative, for summary judgment.

Plaintiff claims that Defendant Radford "has made a practice of Opening Plaintiff's Legal mail that is clearly marked as Legal Mail and has been doing so for the last 5 years," or since 2004. (Complaint, Dkt. 1 at 7.) In support of her Motion, Defendant has submitted Plaintiff's answers to interrogatories propounded under Federal Rule of Civil Procedure 33. When asked to list "all dates on which Kathy Radford allegedly opened [his] legal mail" and to identify the sender of each piece of mail, Plaintiff listed the following sixteen discrete incidents:

1.  06/28/2004: Attorney Frederick Loats
2.  11/09/2004: Confidential Investigations Process Servers.
3.  11/10/2005: Attorney Erik P. Smith
4.  09/19/2006: Idaho State Bar
5.  04/19/2006: Idaho State Bar
6.  04/24/2006: Attorney Jonathan Hull
7.  12/21/2006: Idaho State Bar
8.  01/09/2007: Kootenai County Courthouse
9.  09/26/2007: Shoshone County Courthouse
10. 10/04/2007: Idaho Supreme Court
11. 05/15/2009: Attorney Jonathan Hull
12. 05/15/2009: Attorney Jonathan Hull
13. 06/09/2009: Idaho State Bar
14. 07/21/2009: Moore & Elia, LLP (law firm)
15. 12/01/2009: Idaho State Bar
16. 12/28/2010: Nevin, Benjamin, McKay & Bartlett LLP (law firm)

(Affidavit of Kathy Radford, Dkt. 33-5 at ¶ 5 and Ex. C, ICC Hayes 437-38.)

**MEMORANDUM DECISION AND ORDER - 3**

However, the undisputed facts show that Defendant worked in the ICC mailroom only from December 11, 2006 to October 24, 2010. (Radford Aff. at ¶ 2 and Ex. A.) Therefore, Plaintiff's mail must have been opened by someone other than Defendant on the following dates: June 28, 2004; November 9, 2004; November 10, 2005; September 19, 2006; April 19, 2006; April 24, 2006; and December 28, 2010. Plaintiff does not contest this fact, but he does seek to add claims against an additional prison official who allegedly opened his legal mail: Francis Hopper. (Motion to Amend, Dkt. 36 at 2.) According to Defendant's Affidavit and the ICC Mail Room Logs submitted in support of Defendant's Motion, Francis Hopper was the individual who opened the January 9, 2007 and September 26, 2007 pieces of mail identified by Plaintiff as incident numbers 8 and 9, above. (Radford Aff. at ¶ 8 and Ex. E, ICC Hayes 637, 692.)

## PLAINTIFF'S MOTION FOR JUDICIAL NOTICE

Because Defendant previously submitted to the Court the documents of which Plaintiff seeks judicial notice, those documents are already in the record, and the Court has considered them along with all other evidence in the record. Accordingly, Plaintiff's Motion for Judicial Notice is thus unnecessary, and the Court will deem it moot.

**MEMORANDUM DECISION AND ORDER - 4**

## PLAINTIFF'S RULE 56(d) MOTION

Plaintiff argues that Defendant's request for summary judgment is premature because the discovery period has not yet closed. (Rule 56(d) Motion at 2.) There is nothing inherently premature about Defendant's Motion, because a party can file a motion for summary judgment "*at any time* until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). However, if the non-moving party can show "by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition," a court may defer or deny the motion for summary judgment or allow additional time for the non-moving party to support his position. Fed. R. Civ. P. 56(d).

Plaintiff has failed to explain why he cannot at this time oppose Defendant's Motion. Plaintiff claims only that he has "discovered new claims and new parties that will have to be brought to justice through the filing of a Second Amended Civil Rights Complaint." (Plaintiff's Affidavit in Support of Rule 56(d) Motion, Dkt. 35 at 2.) Although he now claims he should be allowed to bring a claim of supervisory liability against Defendant Radford, as well as new claims against Francis Hopper (*id.* at 2-3), Plaintiff has not submitted a proposed amended complaint; thus, the Court cannot determine what additional allegations Plaintiff would state in an amended complaint. Most importantly, Plaintiff has not disputed any of Defendant's evidence, nor has he identified any other evidence he would seek during the remainder of the discovery period. For these reasons, Plaintiff's Rule 56(d) Motion will be denied.

**MEMORANDUM DECISION AND ORDER - 5**

## DEFENDANT'S MOTION TO DISMISS

### 1.      Standards of Law

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To have a claim under § 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).[2] Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Conner*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).

### A.      Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Although a complaint attacked by a motion to dismiss for failure to state a claim "does not need

---

[2]  Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

**MEMORANDUM DECISION AND ORDER - 6**

detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678. This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted). Where a plaintiff asserts facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks and alteration omitted).

The Supreme Court has identified two "working principles" that underlie this dismissal standard. *Iqbal*, 556 U.S. at 678 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Second, only a complaint that states a plausible claim for relief can survive a motion to dismiss. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience

**MEMORANDUM DECISION AND ORDER - 7**

and common sense." *Id.*

Although Defendant cites Federal Rule of Civil Procedure 12(b)(6) in her

Memorandum in Support of the Motion to Dismiss (Dkt. 33-4 at 2), Defendant's Motion

would ordinarily be construed as a motion for judgment on the pleadings under Rule

12(c) because Defendant filed the Motion after she filed her answer. *Compare* Fed. R.

Civ. P. 12(b)(6) ("A motion asserting any of these defenses must be made before pleading

. . . .") *with* Fed. R. Civ. P. 12(c) ("After the pleadings are closed, . . . a party may move

for judgment on the pleadings."). This difference is merely technical, however, because a

pre-answer motion to dismiss under Rule 12(b)(6) is "functionally identical" to a post-

answer motion for judgment on the pleadings under Rule 12(c). *Dworkin v. Hustler*

*Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

That said, a motion to dismiss based on failure to exhaust is treated slightly

differently from other motions to dismiss or motions for judgment on the pleadings.

Failure to exhaust is an affirmative defense that should be brought as an "unenumerated

Rule 12(b) motion" to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In

the context of such a motion, a court's consideration of evidence outside of the pleadings

does *not* transform the motion to dismiss into a motion for summary judgment. Rather, in

deciding a motion to dismiss for failure to exhaust administrative remedies, the Court

"may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120. The

party asserting failure to exhaust bears the burden of proving such failure. *See Brown v.*

*Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If a prisoner has failed to exhaust his

**MEMORANDUM DECISION AND ORDER - 8**

administrative remedies prior to filing suit, his claims must be dismissed without

prejudice. *Wyatt*, 315 F.3d at 1120.

### B.   Motion for Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or

defense, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the

summary judgment rule "is to isolate and dispose of factually unsupported claims or

defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored

procedural shortcut," but is instead the "principal tool[] by which factually insufficient

claims or defenses [can] be isolated and prevented from going to trial with the attendant

unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v.*

*Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine*

dispute as to any *material* fact in order for a case to survive summary judgment. Material

facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over

irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W.*

*Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each

material fact cannot be disputed. To show that the material facts are not in dispute, a

party may cite to particular parts of materials in the record, or show that the adverse party

**MEMORANDUM DECISION AND ORDER - 9**

is unable to produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all *reasonable* inferences that can be drawn from the evidence must be drawn in the light most favorable to the non-moving party,

**MEMORANDUM DECISION AND ORDER - 10**

*T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt *unreasonable* inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**2.      Discussion of Exhaustion of Administrative Remedies**

The first question is whether Plaintiff exhausted his claims that Defendant wrongfully opened his legal mail. (Memo. in Support of Motion to Dismiss, Dkt. 33-4 at 14-15.) Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Courts may not "read futility or other exceptions into [the PLRA's] statutory exhaustion requirements." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

**A.      The IDOC has established a mandatory three-step grievance process.**

**MEMORANDUM DECISION AND ORDER - 11**

The IDOC's grievance process, which ICC uses, consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an offender concern form, addressed to the staff person "most capable of responding to [the concern] and, if appropriate, resolving the issue." (Affidavit of Margaret Purcell, Dkt. 33-6 at ¶ 8.) Then, if the issue cannot be resolved informally through the use of a concern form, the inmate must then file a grievance form. (*Id.* at ¶ 9.)

When submitting a grievance, the inmate "must suggest a solution to the issue" and include specific information regarding the incident of which the inmate complains. (*Id.* at ¶ 10.) The inmate must also attach a copy of the concern form showing his previous attempt to resolve the issue informally. (*Id.* at ¶ 19 and Ex. A, ICC Hayes 1367; Ex. B, ICC Hayes 1376-77; Ex. C, ICC Hayes 444-45.) A staff member responds to the inmate's grievance and returns it to the Grievance Coordinator, who forwards the grievance to a "reviewing authority," usually a deputy warden. (*Id.* at ¶ 10.) The reviewing authority then evaluates the staff member's response and decides whether to "deny, modify, or grant the offender's suggested solution." (*Id.*)

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision. Once the inmate files the appeal, the "appellate authority," usually the warden, reviews the appeal and must respond within fourteen days. The Grievance Coordinator then forwards the appellate decision to the inmate. (*Id.* at ¶ 12.) Not until the completion of all three of these steps—concern form, grievance, and grievance appeal—is the grievance process exhausted. (*Id.* at ¶ 13.)

**MEMORANDUM DECISION AND ORDER - 12**

**B.     Plaintiff did not exhaust his administrative remedies as to any claim except those set forth in Grievance No. 27010207003.**

Defendant did not begin working in the ICC mail room until December 11, 2006. (Radford Aff. at ¶ 2.) Thus, the Court need not look to grievance records prior to the year 2006 to determine whether Plaintiff properly exhausted his remedies. Because exhaustion must have occurred *before* Plaintiff filed this action, *McKinney v. Carey,* 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam), the Court also need not look to grievance records after November 2, 2009—the date this Court received Plaintiff's Complaint.

According to Margaret Purcell, the Grievance Coordinator at ICC who has reviewed Plaintiff's grievance files, Plaintiff filed only two grievances from 2006 through 2009 regarding Defendant's opening of Plaintiff's legal mail: one filed in February 2007 and one filed in September 2008. (Purcell Aff. at ¶ 16, 17-20.) The grievance logs submitted along with Ms. Purcell's Affidavit confirm that all other grievances Plaintiff filed during the relevant time period related to issues other than the opening of his legal mail. (Purcell Aff. at Ex. D, ICC Hayes 912-1135.)

Between December 21, 2006, and January 9, 2007, Plaintiff submitted three concern forms complaining that his legal mail was being opened outside of his presence. (*Id.* at ¶ 18 and Ex. D at ICC Hayes 957-58.) Dissatisfied with the responses to his concerns, he filed a grievance on February 6, 2007, stating, "My legal mail is being opened and then forwarded on to me. My legal mail is confidential do not open." (*Id.* at ¶ 18 and Ex. D at ICC Hayes 956-59, 960.) This grievance was assigned Grievance No.

**MEMORANDUM DECISION AND ORDER - 13**

27010207003. Defendant responded that Plaintiff's three concern forms "were answered in a timely fashion" and that there had been no further incidents. (*Id.* at ¶ 18 and Ex. D. at ICC Hayes 959-60.) The reviewing authority denied the grievance, and Plaintiff appealed. That grievance appeal was denied by the warden on March 7, 2007. (*Id.* at ¶ 18 and Ex. D, ICC Hayes 960.) Because Plaintiff completed all three steps of the grievance process, he properly exhausted his claims that from late 2006 to early 2007, Defendant wrongfully opened his legal mail on several occasions.

However, the second grievance that Plaintiff filed with respect to his current claims was not properly exhausted. On September 18, 2008, Plaintiff filed a grievance claiming that "[t]he mail room is once again opening my legal mail that was clearly marked legal mail." (*Id.* at ¶ 19 and Ex. D, ICC Hayes 1009.) This grievance was returned to Plaintiff "without action" because he did not attach to the grievance a copy of a concern form showing his informal attempts to resolve the issue informally as required by the grievance policy. (*Id.* at ¶ 19 and Ex. D, ICC Hayes 1010.) Plaintiff did not resubmit the grievance (*id.* at ¶ 19), and therefore he did not exhaust his administrative remedies with respect to those claims.

Because Plaintiff exhausted his administrative remedies as required by the PLRA only as to the claims set forth in Grievance No. 27010207003, all of his other claims must be dismissed without prejudice. *See Wyatt*, 315 F.3d at 1120.

**3.    Plaintiff's Exhausted Claims Do Not Involve Legal Mail.**

The Court now turns to those claims that Plaintiff did exhaust. Of the sixteen

**MEMORANDUM DECISION AND ORDER - 14**

discrete incidents identified by Plaintiff in response to Defendant's Interrogatory No. 9 (*see* Radford Aff. at ¶ 5 and Ex. C), only two could possibly have been set forth in Grievance No. 27010207003—the incidents of December 11, 2006 and January 9, 2007. The next earliest date identified by Plaintiff is April 24, 2006 (at which time Defendant was not employed at ICC), and the next latest date is September 26, 2007, long *after* Plaintiff exhausted his claims in Grievance No. 27010207003. (*Id.*) Therefore, the Court need only consider the merits of these two claims.

Prison inmates retain the First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). However, like other constitutional rights of prisoners, the right to send and receive mail is subject to limitations arising "both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."

The inspection of mail by prison officials is generally permissible as reasonably related to the legitimate penological interest of promoting security and uncovering contraband. *See Mann v. Adams*, 846 F.2d 589, 590-91 (9th Cir. 1988) (per curiam). Legal mail, however, such as mail from an attorney, is confidential and subject to stricter First Amendment protection. *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996). "[A] prison's security needs do not automatically trump a prisoner's First Amendment

**MEMORANDUM DECISION AND ORDER - 15**

right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003).

Even though the First Amendment offers protection for inmates' legal mail, the Supreme Court has upheld prison regulations allowing prison officials to open and inspect legal mail in the presence of the inmate. *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974). This presence requirement does not apply to ordinary, non-privileged mail; prison officials may open and inspect such mail without raising constitutional concerns.

Although it is undisputed that Plaintiff was not present when the pieces of mail at issue were opened, Defendant argues that the presence requirement does not apply because the mail opened on those two occasions cannot be considered "legal mail." On December 11, 2006, Defendant opened mail from the Idaho State Bar, and on January 9, 2007, Defendant opened mail from the Kootenai County Courthouse. (Radford Aff. at ¶ 5 and Ex. C.)

It is well-established that "[m]ail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *as amended by* 135 F.3d 1318 (9th Cir. 1998). Further, the Sixth Circuit has held that mail from the American Bar Association did not constitute legal mail. *Sallier*, 343 F.3d at 875. The Idaho State Bar, like the American Bar Association, "is a professional organization designed to support attorneys in a variety of ways; it is not an organization that has the authority to take action on behalf of an inmate." *Id.* It does not provide legal advice or

**MEMORANDUM DECISION AND ORDER - 16**

directly represent clients in legal matters. Therefore, the Court concludes that the mail Plaintiff received from the Idaho State Bar, as well as the mail from the Kootenai County Courthouse, was not legal mail. Accordingly, Defendant did not violate Plaintiff's constitutional rights by opening that mail.

## PLAINTIFF'S MOTION TO AMEND

Plaintiff seeks leave to amend his Complaint. Courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may dismiss a complaint without leave to amend, however, if the complaint "could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (reversing denial of leave to amend where there was no finding that "the pleading could not be cured by the allegation of other facts"). Other factors supporting a dismissal without leave to amend are bad faith, undue delay, prejudice to the opposing party, and previous opportunities to amend. *In re Morris*, 363 F.3d 891, (9th Cir. 2011).

Any amendment to Plaintiff's Complaint would be futile. Defendant's Motion must be granted because (1) Plaintiff did not exhaust his administrative remedies before he filed suit except with respect to the claims set forth in Grievance No. 27010207003, and (2) the claims he exhausted do not involve legal mail. Even if Plaintiff were to add claims against Francis Hopper, the only pieces of mail she possibly opened were from the Kootenai County Courthouse and from the Shoshone County Courthouse. (Radford Aff. at ¶¶5, 8; Ex. C at ICC Hayes 437-38; Ex. E at ICC Hayes 637, 692.) As explained above,

**MEMORANDUM DECISION AND ORDER - 17**

such mail is not legal mail that must be opened in the presence of the inmate.  Plaintiff cannot make any further allegations that would change these facts. Therefore, the Complaint cannot be saved by amendment.

Futility is enough, by itself, to deny leave to amend. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). But the other factors also weigh against granting leave to amend. First, the Court already allowed Plaintiff an opportunity to amend and accepted his Amended Complaint. Second, Plaintiff knew no later than November 7, 2011 that Defendant had a supervisory position in the mailroom and that Francis Hopper opened some of his mail (*see* Second Affidavit of James R. Stoll, Dkt. 40-1 at ¶ 4 and Exs. A and C), but he did not file the instant Motion to Amend until June 19, 2012—when he was faced with a motion to dismiss and motion for summary judgment. This unexplained delay leads the Court to conclude that Plaintiff's late request for leave to amend is merely a desperate tactic aimed at holding off a dismissal rather than a genuine desire to amend based on newly discovered evidence. The Court thus concludes that Plaintiff's request was made in bad faith and that amendment would cause undue delay. Third, the discovery deadline has passed, and Defendant would undoubtedly suffer undue prejudice if the Court were to reopen discovery at this late stage. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint.").

For the foregoing reasons, the Court will deny Plaintiff's Motion to Amend.

**MEMORANDUM DECISION AND ORDER - 18**

# ORDER

**IT IS ORDERED:**

1.     Defendant's Motion to Dismiss (Dkt. 33) is **GRANTED**.  Plaintiff's

Complaint is **DISMISSED with prejudice in part and without prejudice

in part**. Plaintiff's claims arising before December 11, 2006 or after

October 24, 2010, as well as his claims that his legal mail was opened on

December 21, 2006 and January 9, 2007, are dismissed with prejudice. All

other claims are dismissed without prejudice as unexhausted.

2.     Plaintiff's Rule 56(d) Motion (Dkt. 37) is **DENIED**.

3.     Plaintiff's Motion to Amend (Dkt. 36) is **DENIED**.

4.     Plaintiff's Motion for Judicial Notice (Dkt. 38) is **MOOT**.

DATED:  **September 28, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 19**